UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| RAQUEL MEIRA DAVIS, an individual,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MACUHEALTH DISTRIBUTION, INC.; FREDERIC JOUHET, an individual; and DOES 1-10, inclusive,<br><br>　　　　Defendants. | No. 2:19-cv-01947 WBS KJN<br><br><u>MEMORANDUM AND ORDER RE:</u><br><u>MOTION TO DISMISS, STAY OR</u><br><u>TRANSFER</u> |

----oo0oo----

　　　　Plaintiff Raquel Meira Davis brought this action against her former employer, MacuHealth Distribution, Inc. ("MacuHealth") and MacuHealth's CEO, Frederic Jouhet, alleging, <u>inter alia</u>, claims for wrongful termination and sexual harassment under California state law and federal law.  (Compl. (Docket No. 1).)  Before the court now is defendants' motion to dismiss, stay or transfer pursuant to the first-to-file rule, or in the alternative, transfer pursuant to 28 U.S.C. § 1404(a).  (Docket

1

1  No. 16.)

2  I.   Background

3         MacuHealth is a limited partnership registered and
4  headquartered in Michigan.  (Compl. ¶ 1.)  It manufactures and
5  sells supplements that allegedly preserve and improve one's
6  vision.  (Id. ¶ 10.)  On June 22, 2015, plaintiff joined the
7  company as a sales representative, covering California, Nevada,
8  and Hawaii.  (Id. ¶ 13.)  As part of her employment, she signed
9  an agreement that contained a forum selection clause providing
10 federal and state courts in Michigan would have "jurisdiction . .
11 . with respect to any action or proceeding arising out of or
12 relating to" her employment.  (Docket No. 16-3, Ex. A.)

13        Plaintiff alleges that, throughout the duration of her
14 employment, she was sexually harassed by Frederic Jouhet,
15 MacuHealth's CEO.  (Compl. ¶¶ 19-24.)  She repeatedly denied his
16 advances, but the harassment continued.  (Id. ¶¶ 28-30, 44, 47.)
17 In May 2017, plaintiff's supervisor told her Jouhet was unhappy
18 with her and had threatened to terminate her employment despite
19 her excellent performance reviews.  (Id. ¶¶ 37, 55.)  Over the
20 next few years, plaintiff was denied customary raises and
21 allowances despite her success, until she felt she was forced to
22 resign in August 2018.  (Id. ¶¶ 56-60, 65-68, 74.)

23        Before filing this lawsuit, plaintiff filed a complaint
24 against each defendant with the California Department of Fair
25 Employment and Housing ("DFEH") and the Equal Employment
26 Opportunity Commission ("EEOC") and obtained right to sue
27 letters.  (Id. ¶ 86.)  Shortly after obtaining these letters,
28 plaintiff's counsel wrote to the defendants in July 2019 to

1  inform them of Davis's intent to file suit in California.  (Decl.
2  of Zainah Alfi ("Alfi Decl.") ¶ 2 (Docket No. 17-2).)  After
3  proceeding through unproductive alternative dispute resolution
4  negotiations, plaintiff's counsel again wrote to defendants in
5  September 2019 to inform them they would be filing suit on
6  September 20, 2019.  (Id. ¶¶ 8-10.)  On September 19, 2019,
7  defendants filed a case in Oakland County Circuit Court in
8  Michigan, alleging plaintiff had misappropriated confidential
9  information in violation of her employment agreement (the
10 "Michigan action").  (Docket No. 17-3.)  Plaintiff then filed
11 this case on September 24, alleging unlawful harassment and
12 failure to prevent harassment in violation of California's Fair
13 Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12940, et
14 seq.; unlawful retaliation in violation of Title VII of the Civil
15 Rights Act, 42 U.S.C. § 2000e-3(a); wrongful termination in
16 violation of public policy; breach of contract; and waiting time
17 penalties pursuant to California Labor Code § 203.  (See Compl.)
18          On November 12, 2019, plaintiff removed the Michigan
19 action to the United States District Court for the Eastern
20 District of Michigan.  She subsequently filed a motion to dismiss
21 or transfer to this court, contesting the validity of her
22 employment agreement's forum selection clause and the court's
23 personal jurisdiction over her.  (Docket No. 16-4.)
24          On March 6, 2020, Judge Sean Cox of the Eastern
25 District of Michigan denied plaintiff's motion in its entirety.
26 (Docket No. 16-6.)  Judge Cox found Davis had failed to overcome
27 the "presumptive validity" of her employment agreement's forum
28 selection clause and it was therefore enforceable.  (Id. at 4-5.)

Additionally, Judge Cox denied her request under 28 U.S.C. § 1404(a) to transfer the action to this court, finding the forum selection clause and public interest favored keeping the case in Michigan.  (Id. at 7.)

Davis filed an answer in the Michigan action and brought counterclaims nearly identical to those alleged in the California action on March 16, 2020.  (Docket No. 16-7.)  Similarly, defendants brought counterclaims in the California case that were nearly identical to those they alleged in the Michigan action.  (Docket No. 6.)  Defendants now move to dismiss, stay or transfer the California action pursuant to the first-to-file rule, or in the alternative, transfer pursuant to 28 U.S.C. § 1404(a).  (Mot. (Docket No. 16).)

II.  Discussion

The first to file rule is "a judicially created doctrine of federal comity, which applies when two cases involving substantially similar issues and parties have been filed in different districts."  In re Bozic, 888 F.3d 1048, 1051 (9th Cir. 2018) (internal quotations and citations omitted).  "Under that rule, the second district court has the discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy."  Id. at 1051-52 (internal quotations and citation omitted).  To determine whether to apply the rule, a district court will consider three factors: "chronology of the lawsuits, similarity of the parties, and similarity of the issues."  Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc., 787 F.3d 1237, 1240 (9th Cir. 2015).  Even if the rule applies, a district court has discretion to refrain from

4

applying the rule in the presence of "bad faith, anticipatory suit, and forum shopping." Alltrade, Inc. v. Uniweld Prod., Inc., 946 F.2d 622, 628 (9th Cir. 1991) (citations omitted). A court may also decline to apply the rule when the balance of convenience weighs in favor of the later-filed action. Id.

The parties do not dispute that the first two factors of the first-to-file rule are satisfied in this case. The Michigan action was indisputably filed first, on September 19, while the California action was not filed until September 24. (Mot. at 4; Opp'n at 6 (Docket No. 17).) This satisfies the first factor. Additionally, the parties agree that the second factor is satisfied, because the parties in both actions are the same. (Mot. at 7; Opp'n at 7.)

However, the parties dispute whether the issues in both actions are sufficiently similar to satisfy the first-to-file rule's third factor. "To determine whether two suits involve substantially similar issues, we look at whether there is 'substantial overlap' between the two suits." Kohn Law Grp., 787 F.3d at 1241. The issues in the suits "need not be identical, only substantially similar." Id. at 1240.

Plaintiff claims the California and Michigan actions are not substantially similar because the California case concerns plaintiff's sexual harassment and retaliation claims while the Michigan action involves her alleged misappropriation of confidential information. (Opp'n at 7.) Plaintiff argues there would be "no meaningful overlap in discovery" and the injunctive relief sought in the Michigan case distinguishes it from the monetary relief she requests in the California case.

5

(Id.)

Despite some differences, the actions mirror each other in all material respects.  In the Michigan action, defendants here (plaintiffs there) sued Davis for breach of contract, unfair competition, and unjust enrichment.  (Docket No. 17-3.)  She then counterclaimed, alleging the same causes of action she brought in the California action against defendants, albeit including two additional claims under Michigan's Elliot-Larsen Civil Rights Act, MCL 37.2101 et seq.  (Docket No. 16-7.)  Similarly, in the California action, defendants brought counterclaims identical to their causes of action in the Michigan action, although they included additional claims for conversion and violations of California's Uniform Trade Secrets Act, Cal. Civ. Code § 3426, California Penal Code § 502, and California Business & Professions Code § 17200.  (Docket No. 6.)  The "substantial overlap" between these two suits satisfies the third and final factor of the first-to-file rule.  See Kohn Law Grp., 787 F.3d at 1241.

Moreover, "the interest of efficiency and judicial economy" would not be served by allowing this action to continue in this court because it would effectively permit the same dispute to be adjudicated by two different federal courts.  See In re Bozic, 888 F.3d at 1051-52.  Plaintiff argues that the "hypothetical judgments in either [the California or Michigan] case would be unrelated and would not impact the other case." (Opp'n at 8.)  However, with the introduction of each parties' counterclaims intertwining the substantive and factual issues of the independent actions, that cannot be the case.  Accordingly,

6

1  the first-to-file rule must apply to "avoid the embarrassment of
2  conflicting judgments" that could otherwise result.  See Church
3  of Scientology v. U.S. Dep't of Army, 611 F.2d 738, 749 (9th Cir.
4  1979).

5       In a last effort, plaintiff argues that even if the
6  first-to-file rule applies, equitable exceptions exist to keep
7  the case before this court.  (Opp'n at 9.)  Plaintiff primarily
8  argues that the "anticipatory suit" exception applies.  (Id.)  "A
9  suit is 'anticipatory' for the purposes of being an exception to
10 the first-to-file rule if the plaintiff in the first-filed action
11 filed suit on receipt of specific, concrete indications that a
12 suit by the defendant was imminent."  Intersearch Worldwide, Ltd.
13 v. Intersearch Grp., Inc., 554 F. Supp. 2d 949, 960 (N.D. Cal.
14 2008) (citations omitted).  However, "a letter which suggests the
15 possibility of legal action . . . in order to encourage or
16 further a dialogue, is not a specific, imminent threat of legal
17 action."  Id.  Consequently, courts normally find a suit is
18 anticipatory only in a narrow set of circumstances, such as when
19 a declaratory action has been filed to declare a party's rights
20 before litigation proceeds.  See Xoxide, Inc. v. Ford Motor Co.,
21 448 F. Supp. 2d 1188, 1193 (C.D. Cal. 2006).

22      Here, plaintiff's letter to defendants warning them of
23 their intent to pursue legal action, (See Alfi Decl. ¶ 8), does
24 not rise to the level of an "anticipatory suit."  Instead,
25 defendants pursued an independent action in Michigan and sought
26 injunctive and monetary relief against Davis for her alleged
27 misappropriation of confidential information, rather than a
28 judicial determination that the harassment did not happen or was

7

1  not actionable. (Docket No. 17-3.) Accordingly, the
2  anticipatory suit exception does not preclude the application of
3  the first-to-file rule.
4      Plaintiff also argues that convenience weighs in favor
5  of proceeding in this court. A court may decline to apply the
6  first-to-file rule when the balance of convenience weighs in
7  favor of the later-filed action. Alltrade, 946 F.2d at 628. To
8  determine convenience, courts consider the location of witnesses
9  and evidence, the lack of connection to the forum, and the degree
10 of calendar congestion in the court, among other factors. Ward
11 v. Follett Corp., 158 F.R.D. 645, 648 (N.D. Cal. 1994).
12     Plaintiff represents that the relevant witnesses reside
13 all over the country. (Opp'n at 13.) But plaintiff concedes
14 "[n]early every witness would have to travel to a trial
15 regardless of whether it proceeds in Michigan or California."
16 (Id. (emphasis added).) Similarly, plaintiff concedes the
17 discovery will likely be all electronic, meaning it could happen
18 anywhere. (Opp'n at 12-13.) This consideration has no bearing
19 either way. Plaintiff then argues she resides in Sacramento,
20 with "no connection to Michigan as a forum." (Id.) But
21 regardless of her lack of connection to Michigan, plaintiff
22 consented to Michigan as the forum for all disputes arising
23 between her and her employer in her employee agreement. (Docket
24 No. 16-3, Ex. A.) Furthermore, MacuHealth is a Michigan
25 corporation and Jouhet is a Michigan resident. (Compl. ¶¶ 1-2.)
26 These facts seemingly favor allowing the action to proceed in
27 Michigan.
28     The most persuasive consideration, however, is the

relative congestion of the court.  As Judge Cox noted in his order, the Eastern District of Michigan "is less congested than the proposed federal court in California."  (Docket No. 16-6.) Plaintiff argues that litigating in the Eastern District of Michigan "does not necessarily ensure a more efficient process" because of its closure until July 2 due to COVID-19.  However, in light of the public response to COVID-19 this court is also closed to the public and has suspended jury trials "until further notice."  (Opp'n at 13); See General Order No. 618 (May 13, 2020).  Accordingly, the convenience considerations weigh in favor of transferring this case to the Eastern District of Michigan.

For the foregoing reasons, the court finds no exceptions to the first-to-file rule apply, and it will transfer the case to the Eastern District of Michigan pursuant to the first-to-file rule.[1]

IT IS THEREFORE ORDERED this action be, and the same hereby is, TRANSFERRED to the United States District Court for the Eastern District of Michigan.

Dated:  May 28, 2020

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[1] Because the action is transferred under the first-to-file rule, the court need not address defendants' argument that transfer is proper under 28 U.S.C. § 1404(a).

9